# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONN HOMER | : | CIVIL ACTION |
| v. | : | |
| THE LAW OFFICES OF FREDERIC I. WEINBERG & ASSOCIATES, P.C. | : | NO. 17-880 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                        **May 16, 2018**

Judgment having been entered in his favor in this action brought under the Fair Debt Collection Practices Act (FDCPA), Ronn Homer has moved for an award of attorney's fees and costs. The defendant, The Law Offices of Frederic I. Weinberg & Associates, P.C., does not contest Homer's entitlement to attorney's fees, but objects to the amount requested, arguing that it is unreasonable and excessive.

## Attorney's Fees Under the FDCPA

A successful plaintiff in an FDCPA action may recover from the debt collector, as part of damages, a reasonable attorney's fee and costs. 15 U.S.C. § 1692k(a)(3). An award of attorney's fees is not discretionary under the Act. It is mandated. *Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir. 1991). Thus, we must determine a reasonable attorney's fee to award Homer.

Determining the amount of a reasonable attorney's fee requires a two-part analysis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001). First, we assess reasonableness of the time spent. *Maldonado,* 256 F.3d at 184. Second, we determine the reasonableness of the hourly rate charged. *Id.* Once these two numbers are established, they are multiplied to yield

the lodestar, which is presumed to be a reasonable fee. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). After the lodestar is established, the burden shifts to the opposing party to demonstrate that the fee is unreasonable. *Id.*

A request cannot be reduced based on factors not raised by the opposing party. *Id.* (quoting *Bell v. United Princeton Props.*, 884 F.2d 713, 720 (3d Cir. 1989)). Objections must be specific. *See United States v. Eleven Vehicles, Their Equipment & Accessories,* 200 F.3d 203, 211–12 (3d Cir. 2000). Nevertheless, once the adverse party specifically objects to a fee request, we have considerable discretion to "adjust the fee award in light of those objections." *Rode*, 892 F.2d at 1183 (citations omitted).

Weinberg contends that Homer's attorney's hourly rate is excessive, and "not in accordance with prevailing rates."[1] It argues that, absent proof that Homer's attorney actually charged an hourly rate of $675, the prevailing market rate is what rate defense counsel charged to defend this case.[2] Weinberg maintains that the highest fee amount awarded in FDCPA litigation is $400 an hour.[3] Weinberg also objects to certain tasks as administrative and duplicative, not attorney work.[4]

Homer initially moved for an award of $27,691.[5] He later amended the amount, excluding 1.9 hours billed by a paralegal and adding 8.4 hours expended by his

---

[1] Def.'s Opp'n to Fee Mot. (Doc. No. 28) at 1.

[2] *Id.* at 9.

[3] *Id.*

[4] *Id.* at 10–13.

[5] Pl.'s Fee Mot. (Doc. No. 25) at 1.

attorneys on the reply brief.[6]  Homer's calculations, including the reductions and additions in time, break down as follows:[7]

| | | |
|---|---|---|
| Cary Flitter: | 39.4 hours x $675 hourly rate | $26,595 |
| Jody Lopez-Jacobs: | 11.1 hours x $240 hourly rate | $ 2,664 |
| Joan Raughley | 3.6 hours x $195 hourly rate | $    702 |
| | **Subtotal** | $29,961 |
| | Fees and Costs | $    463[8] |
| | **TOTAL** | **$30,424** |

*Hourly Rate*

Weinberg argues that the relevant market rate is the one charged by attorneys to defend FDCPA cases.  It points out that its attorney charges less than half what Homer's attorney seeks.  It also contends that Homer's attorney, Cary Flitter, does not charge his FDCPA clients $675 an hour.[9]

The rate is not what defense counsel charges.  It is what the market rate is in the legal community.  In determining a reasonable hourly rate, we compare the attorney's rates to the market rates in the community for similar services by lawyers of "reasonably comparable skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (quoting *Rode*, 892 F.2d at 1183).  Weinberg objects only to Flitter's rate, not his associate's and paralegal's hourly rates.

Homer maintains that, given the type of work performed and counsel's experience in the field, Flitter's hourly rate of $675 is reasonable.  To establish the prevailing market rates in Philadelphia, he provides declarations from David A. Searles,

---

[6] Pl.'s Reply to Fee Mot. (Doc. No. 31) at 10–11.

[7] *See* Pl.'s Fee Mot. at 14; Pl.'s Reply to Fee Mot. at 11.

[8] Though he requests $463 in fees and costs, the actual amount is $463.50, which Weinberg does not dispute.

[9] Def.'s Opp'n to Fee Mot. at 5–7.

3

contributing author to Pennsylvania Consumer Law and an experienced litigator, and Thomas G. Wilkinson, Jr., lead editor of the Pennsylvania Ethics Handbook and chair of his firm's Professional Responsibility Committee.[10] Both declarants opine that Flitter's hourly rate is reasonable and consistent with those charged by other firms specializing in consumer credit litigation.[11]

Homer also relies on the 2017 CLS fee schedule fixing an hourly rate of $620–650 for attorneys with more than twenty-five years of experience.[12] Flitter, who has practiced for thirty-six years, charges a higher rate than the top of the CLS range. Homer argues that Flitter's considerable expertise and professional background support the extra $25.[13]

The CLS fee schedule is often used as a guide to determine an appropriate hourly rate. S*ee, e.g.*, *Pelzer v. City of Philadelphia,* 771 F. Supp. 2d 465, 470 (E.D. Pa. 2011). The Third Circuit has used it. *Maldonado,* 256 F.3d at 187–88. But, it is not binding. The CLS schedule is based only on years of practice. It does not consider the attorney's experience in the relevant field, the level of participation in a case, and reputation in the field.

Flitter is an experienced consumer litigation attorney. During his thirty-six years of practice, he has litigated numerous consumer-related cases, lectured at various law schools on consumer law issues, presented on consumer law topics, and contributed to

---

[10] Pl.'s Fee Mot. Ex. C (Doc. No. 25-3) (Searles Decl.), ¶ 3, 6; Ex. D (Doc. No. 25-4) (Wilkinson Decl.), ¶ 1.

[11] Wilkinson Decl. ¶¶ 8–9; Searles Decl. ¶¶ 4–6.

[12] Pl.'s Fee Mot. Ex. E (Doc. No. 25-5).

[13] Pl.'s Fee Mot. at 13.

4

the leading legal treatise in Pennsylvania on consumer law issues.[14] In assessing the reasonableness of his hourly rate, Wilkinson and Searles considered his expertise and success as a consumer protection attorney.[15]

Weinberg argues that Flitter's rate is not in line with the $300 hourly rate fixed by other district courts in FDCPA cases. It cites to cases that are both factually distinguishable and outside the relevant market.[16] The reasonable hourly rate is calculated according to the prevailing market rate in the relevant community. *Loughner,* 260 F.3d at 180. Generally, the relevant community is the forum of the litigation. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005); *see also Simring v. Rutgers*, 634 F. App'x 853, 858 n.1 (3d Cir. 2015).

Here, the relevant community is the Philadelphia area. What is a reasonable rate in the Middle District is not necessarily reasonable in this district. *See Richards v. Client Servs., Inc.*, Civ. A. No. 14-CV-1402, 2015 WL 5836274, at *3 (M.D. Pa. Oct. 5, 2015) (admitting the Eastern District of Pennsylvania has significantly higher hourly rates for counsel).

In this district, courts have approved hourly rates for Flitter at over $600 an hour. *See id.* (finding Flitter's $635 an hour rate to be reasonable, despite being higher than

---

[14] Pl.'s Fee Mot. Ex. A (Doc. No. 25-1) (Flitter Decl.), ¶¶ 4–5, 8–9, 24.

[15] Wilkinson Decl. ¶¶ 2–3; Searles Decl. ¶¶ 6–7.

[16] For example, in *Caplan v. Premium Receivables LLC*, the court found one partner's hourly rate of $425 to be unreasonable, despite being in practice for thirty-five years, because he failed to provide any information to substantiate the rate. Civ. A. No. 2:15-CV-474, 2015 WL 4566982, at *6 (W.D. Pa. July 29, 2015). *Caplan* also acknowledged that a $300 hourly rate was reasonable since it was in line with the prevailing market rates in Pittsburgh. *Id.* Unlike *Caplan*, this litigation is in Philadelphia and Homer's counsel provided two declarations and the CLS fee schedule as support for his fee rate.

Weinberg also cites to attorney rates in § 1983 cases, which are irrelevant to the present FDCPA litigation. *See, e.g.*, *Haines v. Forbes Rd. Sch. Dist.*, Civ. A. No. 1:07-CV-00851, 2010 WL 56101, at *5 (M.D. Pa. Jan. 5, 2010); *Diana v. Oliphant*, Civ. A. No. 3:05-CV-2338, 2009 WL 2426134, at *5 (M.D. Pa. Aug. 6, 2009), *vacated and remanded*, 441 F. App'x 76 (3d Cir. 2011).

5

Middle District rates, because he had experience that local counsel did not have and Eastern District counsel rates were generally higher); *Harlan v. Transworld Sys., Inc.*, Civ. A. No. 13-5882, 2015 WL 505400, at *11 (E.D. Pa. Feb. 6, 2015) (approving Flitter's $620 an hour rate given the current market rates in the region and his experience). Considering Flitter's tenure and experience in the consumer litigation field, and the rates previously approved for him in this district, we conclude that $675 is a reasonable hourly rate.

*Disputes with Specific Time Entries*

A fee petition must include fairly detailed information for time devoted to various activities. *Rode,* 892 F.2d at 1190. Although "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted," a fee petition must be specific enough to determine if the hours claimed are unreasonable for the work performed. *Id.* (citations omitted). We must "decide whether the hours . . . were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " *Pub. Interest Grp., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir.1995) (quoting *Hensley,* 461 U.S. at 433–34).

*Flitter's Time Entries*

Weinberg challenges 3.1 hours of time billed by Flitter as administrative or duplicative.[17] Flitter's time entries for February 7, 2017 and March 24, 2017 involve 0.1 hours for sending an engagement letter and 0.2 hours for inputting calendar dates and preparing the Rule 26(f) report, respectively. Sending an engagement letter and

---

[17] Def.'s Opp'n to Fee Mot. at 11–12.

6

inputting calendar dates are non-compensable administrative tasks.  *See, e.g.*, *Brass v. NCO Fin. Sys., Inc.*, Civ. A. No. 11-CV-1611, 2011 WL 3862145, at *5 (E.D. Pa. July 22, 2011), *report and recommendation adopted,* Civ. A. No. 11-1611, 2011 WL 3862069 (E.D. Pa. Aug. 31, 2011) (noting that counsel may not be compensated for purely administrative tasks such as mailing a letter).  However, preparing a Rule 26(f) report is clearly legal work.  Thus, we remove only 0.1 hours from Flitter's February 7 time entry and 0.1 hours from his March 24 time entry.

Weinberg also argues that Flitter's May 11, 2017 entry for reviewing two circuit cases is redundant of a March 2, 2017 time entry in which he reviewed the same cases.  He seeks to reduce the May 11 entry by 2.1 hours, the amount of hours billed on March 2.  We do not find these time entries duplicative.  Flitter's March 2 time entry states that he reviewed the circuit cases and the May 11 entry states he conducted legal research regarding those cases.  The two tasks are not the same.[18]  Therefore, the May 11 entry will stand.

Likewise, we are not convinced by Weinberg's argument that Flitter's April 21, 2017 time entry for reviewing a motion to dismiss should be reduced because he took substantially less time to read an opposition to summary judgment motion on May 19, 2017.  Flitter spent 1.2 hours to review Weinberg's motion to dismiss.[19]  In contrast, Flitter spent only 0.4 hours reviewing Weinberg's opposition to summary judgment motion.[20]  Because 1.2 hours is not an unreasonable amount of time to review a

---

[18] This is particularly true given that, along with conducting research on May 11, Flitter was drafting his motion for summary judgment.

[19] *See* Def.'s Mot. to Dismiss (Doc. No. 11).

[20] *See* Def.'s Opp'n to Cross Mot. for Summ. J. (Doc. No. 16).

7

dispositive motion, we do not deduct Flitter's April 21 time entry.

*Raughley's Time Entries*

Weinberg objects to 4.4 hours of time billed by Flitter's legal assistant, Joan Raughley, as administrative.[21] They include time for checking filing fees, scanning, downloading, and copying documents, updating binders, recording dates into calendars, proofreading legal documents, and preparing letters.[22] In response, Homer withdraws his request for reimbursement for 1.9 hours expended on downloading documents, updating a pleadings binder, scanning, and recording dates in the calendar.[23]

Counsel may not recover costs for purely administrative tasks, such as filing and copying, entering a case in a management system, mailing letters, preparing a cover letter, and checking for filing fees. *See Reg'l Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 719 (E.D. Pa. 2016); *Brass*, 2011 WL 3862145, at *5; *Sheffer v. Experian Info. Solutions, Inc.*, 290 F.Supp.2d 538, 549 (E.D. Pa. 2003).

Raughley's work on March 24, April 10, April 20, April 21, April 26, May 5, May 19, June 20, November 9, November 15, and November 16, 2017 is not compensable. Nor are 0.3 hours on February 22 and February 27, 0.1 hours on March 20, and 0.2 hours on March 27, 2017. These entries represent administrative tasks and must be excluded.

Over Weinberg's objections, we approve of 0.1 hours spent on March 13 and 0.3 hours spent on March 27, 2017 for proofreading. Proofreading is more than a mere

---

[21] Def.'s Opp'n to Fee Mot. at 11–13.

[22] *Id.* at 12–13.

[23] Pl.'s Reply to Fee Mot. at 10.

administrative task and can be recovered.  See *Walton v. Massanari*, 177 F. Supp. 2d 359, 365 (E.D. Pa. 2001) (suggesting that proofreading is not clerical).

## Conclusion

After removing the time entries for administrative tasks and reducing the number of properly chargeable hours, the adjusted lodestar amount is $29,436.[24]  We conclude that as the successful plaintiff, Ronn Homer is entitled to a total of $29,436 in fees and $463.50 for costs.

/s/TIMOTHY J. SAVAGE

---

[24] The number represents the sum of the following charges, which also include time expended for the reply brief: Cary Flitter (39.2 hours x $675 = $26,460); Jody Lopez-Jacobs (11.1 hours x $240 = $2,664); and Joan Raughley (1.6 hours x $195 = $312).